928 A.2d 851 (2007)
395 N.J. Super. 221
STATE of New Jersey, Plaintiff-Respondent,
v.
Richard WILSON, Defendant, and
Safety National Casualty Corp. (Surety), Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
James Franklin, Defendant, and
Safety National Casualty Corp. (Surety), Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Regina Charles, Defendant, and
Safety National Casualty Corp. (Surety), Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 2007.
Decided July 26, 2007.
*852 Samuel M. Silver, argued the cause for appellant.
Niki Athanasopoulos, Deputy County Counsel, argued the cause for respondents (Thomas F. Kelso, Middlesex County Counsel, attorney; Ms. Athanasopoulos, on the brief).
Before Judges KESTIN, WEISSBARD[1] and PAYNE.
The opinion of the court was delivered by
PAYNE, J.A.D.
In these bail forfeiture cases, which we have consolidated for purposes of argument and this opinion, the corporate surety, Safety National Casualty Corp., appeals from orders of the trial court denying its motions to set aside forfeitures of bail. The primary issue raised by all three of the matters is whether an order of forfeiture should be vacated when the defendant has been located in an out-of-state jail or prison and a detainer has been lodged, but the defendant has not been returned to this State.

I.
In our opinion in State v. Erickson, 154 N.J.Super. 201, 381 A.2d 72 (App.Div. 1977), we distinguished situations in which a defendant forfeited bail because of an inability to appear in court, occasioned by imprisonment in another county, from those in which the inability to appear was occasioned by imprisonment in another state. With respect to in-State imprisonment, we observed:
Bail will be exonerated where the performance of the condition of the bail contract, i.e., the appearance of the principal to answer to a criminal charge, is rendered impossible by an act of the law operative in the state where the obligation was assumed. The accepted rule is that a subsequent arrest and imprisonment in the same state, although in another county, will relieve a defendant from appearing at the time and place stipulated. The very same state government which has held defendant amenable to a charge in one county, has by law taken jurisdiction or custody of him in another county.
[Id. at 204-05, 381 A.2d 72 (citations omitted).]
We stated in dictum that different reasoning applies if the defendant is imprisoned out-of-state.
The mere fact that a defendant is imprisoned in another state is not sufficient to relieve a forfeiture in whole or in part. It is the same as if he had left the state and refused of his own volition to return. It has long been accepted that the duty of one state to surrender the principal of a bail to another state is not absolute and unqualified, and therefore, out-of-state incarceration of a defendant does not protect a surety. Taylor v. Taintor, 83 U.S. (16 Wall.) 366, 21 L.Ed. 287 (1873); Steelman v. Mattix, 38 N.J.L. 247 (Sup.Ct.1876).
[Erickson, supra, 154 N.J.Super. at 204, 381 A.2d 72 (citations partially omitted).]
*853 However, twenty-six years later, we did not observe this distinction, nor did we comment on it, in our decision in a number of consolidated cases, some of which involved defendants, imprisoned out-of-state, who had not yet been returned to New Jersey. State v. Harmon, 361 N.J.Super. 250, 258, 261, 825 A.2d 515 (App.Div. 2003). Rather, we ordered remission in varying amounts, depending on the circumstances, or indicated that exoneration likely would have been proper if the surety had acted appropriately and promptly. Id. at 258, 825 A.2d 515. Although the issue of the treatment for bail purposes of defendants remaining in out-of-state custody may not have been directly presented in Harmon, that is not the case now, and it is therefore considered.

II.
The following circumstances provide the factual context for our comments.
In State v. Wilson, bail, in the form of a $50,000 bond, was posted by an agent of the surety on February 27, 2004. The nature of defendant's alleged crime does not appear in the record. Defendant failed to appear in court on March 19, and a notice of bail forfeiture was sent to the surety on March 26, 2004. Three days later, on March 29, 2004, defendant was located by the State through the NCIC database, which indicated that he was imprisoned in the Pasco County Detention Center, in Land-O-Lakes, Florida, on charges of grand theft. A detainer was lodged and, according to the State at oral argument in the Law Division, it was "now awaiting extradition from Florida." On June 11, 2004, a default judgment was nevertheless entered on the bond. Defendant was located by the surety's recovery agent on August 25, 2004. On September 9, 2004, the surety moved, on the basis of defendant's incarceration, to stay entry of the judgment and to vacate the forfeiture and/or judgment, exonerate the surety, and discharge the bond. In an order dated June 14, 2006, relief was denied. The surety was required to pay the sum of $50,000 by July 3, 2006, at which time the default judgment would be vacated and the bond discharged.
In denying exoneration or remission to the surety, the court relied upon Erickson, stating:
I am following that case insofar as the defendant is not in this state and, therefore, the relief sought should not be granted. The surety maintains its ability to bring an action for remission once the defendant is returned to the custody of New Jersey and the issues surrounding its efforts with respect to that and the State's justification of its expenses and all of the factors for consideration under [State v. Hyers, 122 N.J.Super. 177, 299 A.2d 748 (App.Div. 1973)] can be considered in such an equitable decision by the Court in terms of whether or not a remission should be granted and if so what amount.
* * *
[T]he fact that the defendant for all intents and purposes remains a fugitive [suggests] that no relief should be granted at this time.
In State v. Charles, following defendant's arrest on charges of theft by deception, bail, in the amount of a $100,000 bond, was posted on May 17, 2005. Defendant failed to appear in court on September 21, 2005, and notice of forfeiture was provided to the surety that day. The State located defendant, in custody, in East Elmhurst, New York's Rose M. Singer Center, on September 30, 2005, where she had been placed on August 31, 2005, and it lodged a detainer against her. A recovery agent of the surety located the defendant on October 17, 2005, following an investigation of her whereabouts. The *854 agent reported that defendant's confinement in New York was premised on charges of larceny and possession of a fraudulent device. On October 25, 2005, the surety moved for exoneration and discharge the bail bond. The motion was, in substance, denied on May 15, 2006, when an order requiring full payment was entered. Again, relying on Erickson, the court found the surety's motion to be premature.
In State v. Franklin, the surety posted bail in the form of a $10,000 bond at an unknown date. Defendant, charged with violating probation, failed to appear in court on July 18, 2005, and notice of forfeiture was provided to the surety on August 26, 2005. The surety located defendant at the Riker's Island's Anna M. Kross Center on September 30, 2005, where he had been held since August 10, 2005 on drug charges and a New Jersey fugitive warrant.[2] The surety moved for exoneration or remission of bail on October 7, 2005, and its motion was denied on the ground that defendant remained a fugitive. According to the State, at the time of oral argument of the motion, it appeared that the bench warrant pertaining to Franklin was still active. However, thereafter, the State confirmed that defendant was incarcerated, as claimed, but allegedly under the name of Frazier Burton or Otis Jones, and that a detainer had been lodged since August 10, 2005. The State has further disclosed that, on or about May 3, 2005, defendant was sentenced to nine years in custody in New York, and he was awaiting extradition from New York to New Jersey. The record does not reflect a motion for reconsideration by the surety, based upon this new evidence.

III.
We have long recognized that "the decision to remit bail and the amount of remission are matters within the sound discretion of the trial court to be exercised in the public interest." State v. Clayton, 361 N.J.Super. 388, 392, 825 A.2d 1155 (App. Div.2003) (citing State v. Peace, 63 N.J. 127, 129, 305 A.2d 410 (1973) and State v. de la Hoya, 359 N.J.Super. 194, 198, 819 A.2d 467 (App.Div.2003)). Nonetheless, that discretion must be guided by the standards articulated in State v. Mercado, 329 N.J.Super. 265, 271, 747 A.2d 785 (App. Div.2000) and State v. Hyers, 122 N.J.Super. 177, 180, 299 A.2d 748 (App.Div.1973), as well as the policy concerns, identified in de la Hoya, supra, 359 N.J.Super. at 199, 819 A.2d 467, that the commercial surety be provided a reasonable incentive to attempt the recapture of the non-appearing defendant and that the burden placed on the surety not be so great as to risk the impairment of a defendant's right to post pretrial bail. The Remittitur Guidelines, issued by the Administrative Director of the Courts, also provide guidance in this regard. See Directive # 13-04, Revision to Forms and Procedures Governing Bail and Bail Forfeitures, Attachment F (2004). See also R. 3:26-6(b). As we also emphasized in Clayton, "the focus of the bail forfeiture procedure is the vindication of the public interest and not primarily revenue raising." 361 N.J.Super. at 393, 825 A.2d 1155.
The party moving to set aside or remit a forfeiture bears the burden of proving "it would be inequitable to insist upon forfeiture and that forfeiture is not required in the public interest." State v. Childs, 208 N.J.Super. 61, 64, 504 A.2d 1212 (App. Div.), certif. denied, 104 N.J. 430, 517 A.2d 423 (1986); see also Mercado, supra, 329 N.J.Super. at 269-70, 747 A.2d 785.
In the present case, the bail forfeiture judge focused exclusively upon the fact *855 that the non-appearing defendants were found in custody out-of-state and had not been returned to New Jersey at the time that exoneration or remittance was sought. We find this single focus, together with the judge's reliance on Erickson, to have obscured issues that the judge should have taken into account in making her decision.
We are mindful of the tension between Erickson and Harmon as to the treatment, for purposes of exoneration or remittance, of defendants who remain in custody in other states. In this connection, we recognize that our observation in Erickson that defendants in out-of-state custody remained fugitives was premised upon our conclusion that sister states did not have an unqualified duty to surrender a defendant to this State, and thus, the defendant's incarceration elsewhere did not protect the surety. In reaching that conclusion, we relied upon precedent decided in the years 1873 and 1877. Since that precedent was decided, the federal government, the District of Columbia, and all states, with the exception of Mississippi and Louisiana, have adopted the Interstate Agreement on Detainers (IAD), codified in New Jersey at N.J.S.A. 2A:159A-1 to -15, which, in general terms, "provides for expeditious delivery of [a] prisoner to the receiving State for trial prior to the termination of his sentence in the sending State." Alabama v. Bozeman, 533 U.S. 146, 148, 121 S.Ct. 2079, 2082, 150 L.Ed.2d 188, 192 (2001). Although the IAD was adopted in New Jersey in 1958, it was not discussed in Erickson, and it is certainly conceivable that its impact was less at the time. Further, since our decision in Erickson, the technical means for locating and keeping track of defendants have improved immeasurably, and we have refined our standards for remission of bail, including the relatively recent promulgation of bail forfeiture guidelines that take into account post-Erickson precedent.
These factors, including the assurance, under the terms of the IAD, that non-appearing defendants, under almost all circumstances, will be made available for extradition to New Jersey to answer pending charges, upon satisfaction of statutory conditions, serve to substantially erode the underpinnings of our dictum in Erickson. The distinctions between New Jersey's state government and that of sister states that we deemed of crucial significance in Erickson, when determining whether a non-appearing defendant remained a fugitive, largely have been obviated by the almost-universal adoption of the interstate compact on detainers. Although we do not preclude consideration of the situs of defendant's incarceration in reaching a determination whether bail should be remitted, we do not regard that circumstance as decisive, as we once did.
At the hearing before the bail forfeiture judge, the State took the position that because the defendants at issue had not been returned to New Jersey, the surety's motion was premature. We regard that position to have been accepted too promptly by the judge, finding unexplored factors to exist that must be balanced in the light of the circumstances of each case.
On the one hand, the surety may be able to demonstrate that the eventual presence of defendants in New Jersey is virtually assured as the result of the operation of the IAD, and thus a delay in a full or partial remittance cannot reasonably be justified under the standards that have been articulated in prior cases and the Guidelines. Whether it is reasonable to afford the State the use of the surety's money in this interim period deserves consideration, as does the question of whether the delay unnecessarily places at risk the assets of the underlying indemnitor and causes equally unnecessary civil forfeiture litigation. A comparison between the *856 practices applicable to exoneration and remittance, as they relate to non-appearing defendants subsequently located in in-state and out-of-state custody, would also be helpful.
On the other hand, the State may argue that it is reasonable to require the surety to await the return of the defendant to New Jersey, that the four-year period for setting aside a forfeiture provided by N.J.S.A. 2A:162-8 is sufficient to permit either the return or the State's dismissal of the New Jersey indictment, or that principles of equitable tolling could be utilized to extend the four-year period when necessary. The fact that the surety remains responsible for the State's costs, In re Midland Ins. Co., 167 N.J.Super. 237, 244, 400 A.2d 813 (App.Div.1979), and the undetermined amount of those costs, which may exceed those incurred in a transfer of custody between counties, may make any remittance prior to the defendant's return to this state impractical.
We note a further concern, somewhat unrelated to the preceding analysis, that arises particularly from the facts of the Wilson and Charles matters. In both cases, the State, by use of a NCIC database that is apparently unavailable to the surety, was able to locate the missing defendants within days of their non-appearance in New Jersey and to lodge detainers at that time. Although, in both cases, the surety also located the defendants through the use of a recovery agent, its efforts were not so speedily fruitful. We recognize the obligation of the surety to monitor and locate a defendant for whom it has posted a bond ensuring his appearance. State v. Poon, 244 N.J.Super. 86, 102, 581 A.2d 883 (App.Div.1990). Nonetheless, we are troubled by the failure of the State in these cases to notify the surety or the court of the fact that the defendants had been found and were securely incarcerated  a practice that, likely, not only increased the surety's costs, but deprived it of an early opportunity to seek to avoid bail forfeiture. We deem this circumstance to be relevant, as well, to any discretionary determination made by the bail forfeiture judge and to constitute a situation in which remedial procedures appear warranted.
If we were able to do so, we would be inclined in this case, as in Harmon, simply to take matters into our own hands and resolve the bail remittance issues that have been raised in these appeals of matters, at least one of which has been pending for many years. However, we find that because their resolution requires a balancing of factors that, in turn, depend on facts that are not available to us in the present record, a remand is necessary.
The orders of the trial court are therefore reversed, and the matters are remanded for further proceedings in accordance with this opinion. Jurisdiction is not retained.
NOTES
[1] Judge Weissbard did not participate in oral argument. However, with the consent of counsel, he has joined in this opinion. R. 2:13-2(b).
[2] A factual issue exists whether the surety notified the State of that fact.