153 N.J. Super. 505 (1977)
380 A.2d 302
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
JESSE SINGLETARY AND PEERLESS INSURANCE COMPANY, DEFENDANTS.
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
WILLIE BALDWIN AND MIDLAND INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division (Criminal).
Decided August 19, 1977.
*508 Mr. Richard P. Blender for defendants Peerless Insurance Company and Midland Insurance Company (Messrs. Rosenthal and Rubinowitz, attorneys).
Mr. Mark F. Saker, Assistant Monmouth County Counsel, for the State (Richard T. O'Connor, Monmouth County Counsel, attorney).
McGANN, J.S.C.
Pursuant to R. 3:26-6(b) and (c) the insurance companies acting as sureties on a number of recognizances for bail in criminal matters moved to set aside forfeitures and judgments on forfeitures of bail previously entered against both the defendant and the surety on each recognizance. Motions were made in 21 matters. In one the motion was granted; in the others it was denied. The surety companies have filed their notices of appeal from 14 of the 20 denials. In accordance with R. 2:5-1(b) the court now supplements the oral determination of the motions made on the record with the following findings and reasons. Because the facts are quite similar in each case and the principles of law identical, two of the matters are captioned as above; the remaining 12 are noted below.[1]
*509 In State v. Singletary defendant was indicted on September 10, 1973 and charged with unlawfully possessing a weapon in violation of N.J.S.A. 2A:151-8. Bail was set at $5,000. Defendant signed the recognizance. Peerless Insurance Company, through its authorized agent, signed as surety. Defendant was released pending trial. Thereafter he failed to appear for arraignment on October 12, 1973. The bail bond was declared forfeit. On notice to defendant and the surety company, the State moved for entry of judgment on the forfeiture. Judgment was entered against both on May 25, 1976 for $5,000. When called upon to pay the judgment the surety company did so. In the affidavit submitted in support of its motion the surety company, through its attorney, states the following:
Defendant was remanded and entered a plea of not guilty on January 6, 1975 and on March 21, 1975 the Prosecutor's motion to dismiss the motion [should read indictment] was granted. Judgment on the forfeited recognizance was entered on May 20, 1976. Defendant was remanded without the assistance of the bondsman as he [the bondsman] refused to cooperate with the bonding company in the performance of his duties, as a result of which he has been dismissed from the company.
The surety, then, did nothing to insure the return of defendant; defendant apparently showed up without any great expense on the part of the State. The surety feels it is entitled to the return of at least part of the judgment it paid; it cannot specify how much or advance a rational basis upon which such determination could be made.
*510 In State v. Baldwin the defendant was indicted on April 19, 1977 on a charge of petit larceny. Bail in the amount of $750 had been posted previously by defendant and Midland Insurance Company as surety while the charge was pending in the local municipal court. Defendant failed to appear at his arraignment (of which the surety had received notice) on May 13, 1977. Bail was declared forfeit and a warrant for his arrest issued.
The affidavit in support of the motion to set aside the forfeiture recites the following:
2. The defendant's bail was forfeited on May 13, 1977. This office [the attorney for the bonding company] immediately commenced an investigation in order to locate the defendant.
3. Our investigation determined that the defendant had moved from his present address and his neighbors believed he had moved to California. We then received information that the defendant might have been apprehended. A call was placed to J. Forrar of the Bench Warrant section of the Monmouth County Prosecutor's Office. Mr. Forrar verified that he had, in fact, been apprehended during the week of June 13, 1977 and was being held in Warren, Ohio. The Monmouth County Bench Warrant was forwarded to Ohio to act as a detainer so that extradition proceedings could begin.
Much of the foregoing is conclusory (cf. R. 1:6-6). That which is not shows that the bonding company actually did nothing to secure defendant's return to New Jersey. Defendant waived extradition; was arraigned on June 24, 1977 and had new bail set at $2,500. Here, again, the bonding company seeks to set aside the forfeiture of $750 in whole or in part. It points to no basis for a rational apportionment. It gives no reason for the relief sought. Its position, simply stated, is this: the State of New Jersey got the defendant back without much effort, therefore, it is not fair to make the bonding company pay what it agreed to pay in undertaking the obligation.
On each of these applications the insurance company takes the position that the obligation rests on the State to come forward and demonstrate the dollar cost to recapture defendant and, to the extent that such cost does not exceed the *511 amount of its bond, the insurance company is entitled to the refund of the difference by way of a partial remission. The applications evince a basic misunderstanding of the concept of bail.
Release "on bail" is a method devised by the common law to allow one to remain at liberty after his initial arrest on a criminal charge and up to the time he is either acquitted or sentenced after conviction. To "bail" a person means to deliver him to persons who in the manner prescribed by law become security for his appearance in court when required. The "bail" is the surety or sureties who procure the release of a person under arrest by becoming responsible for his appearance at the times and places designated. The legal effect of being released on bail is to transfer custody of defendant from the jail to his bail while keeping defendant within the constructive custody of the court. Black's Law Dictionary (4 ed., 1951), passim; State v. Konigsberg, 33 N.J. 367, 372, 373 (1960); State v. Johnson, 61 N.J. 351, 351, 364 (1972); State v. Rice, 137 N.J. Super. 593, 599 (Law Div. 1975), affirmed 148 N.J. Super. 145 (App. Div. 1977).
In order to be released on bail defendant and his surety enter into a contract with the State. That contract consists of this agreement: if the State will release the defendant from custody during the pendency of the action, defendant and his surety jointly and severally agree that defendant will be produced in person before the court when his appearance is ordered. As a sanction to insure that they will keep their executory portion of the contract both defendant and his surety jointly and severally agree that they are then indebted to the State in a specified dollar amount, but that if defendant keeps all required court appearances, the indebtedness will be voided. This contract is memorialized in writing by the bail bond or "recognizance." In that document the State is the creditor, defendant, the principal obligor or debtor, and the "bail" is the surety or guarantor. The bail bond encompasses the terms of the agreement of the parties, the amount of the indebtedness and *512 the conditions for appearance which, if met, will void the debt. If the condition is not met, both defendant-principal and bail-surety become absolute debtors of the State in the amount of the bond. State v. McNeal, 18 N.J.L. 333, 334 (Sup. Ct. 1841); United States v. Zarafonitis, 150 F. 97, 99 (5 Cir.1907); Joelson v. United States, 287 F. 106, 108 (3 Cir.1923); United States v. Smith, 3 F. Supp. 498, 499 (D.N.J. 1933). See generally, State v. Gonzalez, 69 N.J. Super. 283, 284 (App. Div. 1961); 74 Am. Jur.2d, Suretyship, § 1 (1974); Restatement, Security, §§ 203 and 209.
As with all forfeitures, harshness is the sometime result. Traditionally, equity has "abhorred forfeitures." And so, as early as 1841 in New Jersey, the court recognized a right to be relieved from a total bail bond forfeiture. In State v. McNeal, supra, the court noted the procedure in England:
At common law, where the recognizance has become forfeited, and was sent to the Exchequer, the party had become an absolute debtor to the crown, but by statute, that court was then empowered to discharge any person, on petition, whom it thought a fit subject for favor. [18 N.J.L. at 334]
The court of the Exchequer was the sole repository for equitable jurisdiction in the English system. See 1 Pomeroy, Equity Jurisprudence (5 ed. 1941), §§ 12a, at 30-40. The practice in that court formed the complete basis for equitable relief in the New Jersey Chancery Court. See "The Court of New Jersey  Some Account of their Origin and Jurisdiction  The Court of Chancery," 18 N.J.L.J. 69, 73 (1895).
Thus, the practice became such that after forfeiture of the bail bond a petition could be filed for relief from the forfeiture and the criminal court would exercise an equitable function incidental to the general criminal jurisdiction. See State v. Traphagen, 45 N.J.L. 134 (Sup. Ct. 1883). When relief was granted to the bondsman it was because of the equitable maxim which "from time immemorial has held `forfeitures *513 to be abhorrent.'" Richards v. Richards, 14 N.J. Misc. 199, 201 (Ch. 1936), aff'd o.b. 120 N.J. Eq. 617 (E. & A. 1936).
The practice of these early courts was codified by the Legislature in 1898. By L. 1898, c. 237, § 113, the Legislature gave the court having jurisdiction over recognizances the power to render judgment on the bond
* * * for the whole of such penalty with interest, or, on application of the defendant, for any part thereof, according to the circumstances of the case and the situation of the party, and upon such terms and conditions as the court deems just and reasonable * * * [Emphasis supplied]
This provision was continued through the 1937 revision of the New Jersey statutes. See R.S. 2:187-24. Upon the revision of Title 2 into Title 2A many procedural provisions, such as bail, became part of the court rules promulgated by the Supreme Court pursuant to N.J. Constitution of (1947), Art. VI, § II, par. 3. See Clapp, "Forward to Title 2A, N.J.S.A. ix, at xvi. See also, Bank of Commerce v. Marakos, 22 N.J. 428, 431 (1956). In the 1953 court rules relief from forfeitures was covered by R.R. 3:9-7(b). Today, of course, the identical provision is contained in R. 3:26-6 (b) and (c).
The general practice now is quite similar to that existing prior to September 15, 1948. If a bailed defendant fails to appear at a scheduled date (of which notice has been given to his surety), the judge, on motion of the prosecutor declares the recognizance to be forfeited and issues a bench warrant for his recapture. In the usual course a formal order declaring the recognizance forfeited is signed and entered thereafter. The clerk advises the county counsel of the declaration of forfeiture. The county counsel then communicates uniformally with the surety, advises him of the declaration of the forfeiture and requests payment of the principal sum of the bond since its condition has not been fulfilled. Such informal request generally suffices and payment *514 is received by the county treasurer. If it is not, a formal motion for judgment of default on the recognizance is filed by the county counsel in the cause, on notice to the principal and surety. The matter is listed for hearing. If there is no objection, the judgment of default for the principal sum of the bond is entered against the principal and surety. If necessary, execution can thereafter issue to enforce the judgment as in the usual case.
If there is objection to the entry of the judgment of default, the court hears and determines the matter and directs the entry of an appropriate judgment or order.[2]
Whether there should be a setting aside of a forfeiture or remission of judgment thereon in whole or in part is a determination "essentially equitable in nature." State v. Hyers, 122 N.J. Super. 177, 180 (App. Div. 1973). Some guidelines to be considered in exercising that equitable discretion are suggested in Hyers. They may be categorized as follows:
(1) The nature of the applicant, who can be either the defendant or the surety. The surety in turn may be compensated or non-compensated, commercial or personal.
(2) If the surety is the applicant, then the diligence of the surety in carrying out his obligation to the court is to be considered. Did he supervise the defendant during his release? What effort did he make to secure the defendant's return after the forfeiture?
(3) The prejudice to the State occasioned by the delay in prosecution caused by the defendant's unauthorized flight. How much time elapsed between failure to appear and ultimate return? Did that time lapse frustrate successful prosecution?

*515 (4) The actual expense incurred in man hours, extra effort and costs in recapturing the defendant and securing his return.
State v. Peace, 63 N.J. 127, 129 (1973) approved the foregoing approach and added another factor, to wit:
(5) "The intangible element of injury to the public interest in almost any case where a defendant deliberately fails to make an appearance in a criminal case."
To the foregoing may be added another requirement, at least where the surety is the applicant, viz:
(6) The exhaustion by the surety of available legal remedies.
In the usual surety-principal relationship the surety, if forced to pay the obligation on behalf of the principal, has the right at law to secure reimbursement from the principal either under an express contract of indemnity or by a promise to indemnify which the law will imply. See 47 Am. Jur.2d, Suretyship, § 171 (1974). In connection with a bail bond there is nothing offensive to public policy in allowing the principal to enter into an express contract for indemnity with the surety. Leary v. United States, 224 U.S. 567, 32 S.Ct. 599, 600, 56 L.Ed. 889 (1912). The surety has the right, at law, to sue on the implied contract of indemnity as well. Restatement, Security, § 104 (comment f). The obligation to reimburse extends to the defendant-principal's estate upon his death. See 72 C.J.S. Principal and Surety § 313 (1951).
It is the uniform policy of bonding companies acting as sureties on criminal recognizances to have defendant execute an indemnity agreement simultaneously with the execution of the recognizance. The indemnity promised by the principal to the surety in such agreement is full and complete. It gives the surety full power to sell any pledged collateral and foreclose on any pledged real estate. It should be noted that the indemnity agreement is not a public document as is the recognizance, but is a private contract between principal and surety. The State knows nothing of it, *516 nor is the State aware of the nature and extent of collateral pledged, if any, nor the disposition of the same.
Therefore, it is patently insufficient for the surety to urge full or partial remission of the monies it was legally obligated to pay by saying, as it does, that the State was really not discommoded by the default and therefore it is unfair to enforce the forfeiture. Before the equitable considerations of Hyers and Peace can come into play the surety must first show that it has been harmed. Was there collateral? What disposition was made of it? The surety is not entitled to a windfall. Has action been started against the defendant on the indemnity agreement? Perhaps there is full and ample relief to the surety through that legal remedy. What assets does the defendant have? What efforts have been made to discover such assets?
It is only after a court is satisfied that the surety has availed itself of all legal remedies  without success  that the question of equitable relief can be reached. A court cannot and should not exercise equitable jurisdiction when there is an adequate remedy at law. Cohen v. Dwyer, 133 N.J. Eq. 226, 229 (Ch. 1943), aff'd 134 N.J. Eq. 350, 351 (E. & A. 1943).
If the absence of an adequate legal remedy is demonstrated by the surety, then a court looks to see if a basis for equitable relief under the Hyers-Peace principles has been made out. It is the surety's burden to prove that the forfeiture is inequitable. State v. Fields, 137 N.J. Super. 79, 81 (App. Div. 1975).
Beyond what is set forth above as contained in the affidavits accompanying their motions, the sureties involved here produce no other proofs. They simply have made no showing at all entitling them to the relief sought. For the foregoing reasons the motions were denied.
NOTES
[1] State v. Roy A. DeSant and Peerless Insurance
 Company Ind. No. 1067-73
 State v. Arthur Uria and Peerless Insurance
 Company Ind. No. 993-72
 State v. Franklin Williams and Peerless Insurance
 Company Ind. No. 465-73
 State v. Jack Custalow and Peerless Insurance
 Company Ind. No. 606-73
 State v. James Rogers and Peerless Insurance
 Company Ind. No. 1078-72
 State v. Pamela Holmes and Peerless Insurance
 Company Ind. No. 196-72
 State v. Joseph Virgil and Peerless Insurance
 Company Ind. No. 847-72
 State v. Lilliam Mae Downing and Peerless Insurance
 Company Ind. No. 1518-71
 State v. Gus Chambers and Peerless Insurance
 Company Ind. No. 1518-71
 State v. Rafael R. Salles and Peerless Insurance
 Company Ind. No. 343-72
 State v. James Blair and Peerless Insurance
 Company Ind. No. 535-72
 State v. Manuel Ruiz and Midland Insurance
 Company Ind. No. 806-76

[2] The discretionary power to set aside such judgment in whole or in part under R. 3:26-6(c) would be exercised rarely since the judgment would have granted initially only after prior notice to the surety and opportunity to be heard.