165 N.J. Super. 421 (1979)
398 A.2d 576
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JESSE SINGLETARY AND PEERLESS INSURANCE COMPANY, DEFENDANTS-APPELLANTS.
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIE BALDWIN AND MIDLAND INSURANCE COMPANY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 9, 1979.
Decided January 29, 1979.
*422 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. Richard P. Blender argued the cause for appellants (Messrs. Rosenthal & Rubinowitz, attorneys).
Mr. Mark F. Saker, Assistant County Counsel, argued the cause for respondent (Mr. Richard T. O'Connor, Monmouth County Counsel, attorney).
The opinion of the court was delivered by FRITZ, P.J.A.D.
These are consolidated appeals by insurance company sureties on recognizances for bail in 14 criminal matters. They appeal from the denial of their motion for an order vacating the judgment of forfeiture and exonerating the bail. The opinion of the trial judge appears at 153 N.J. Super. 505 (Law Div. 1977).
The Law Division judge premised his denial of these motions, at least in part, on the failure of the surety to have "availed itself of all legal remedies," i.e., pursuit at law of the principal on his or her indemnity agreement, the *423 judge noting that in the "usual surety-principal relationship," or according to the "uniform policy of bonding companies acting as sureties on criminal recognizances," an indemnity agreement is required. While reported cases permitting bail sureties to require indemnification agreements and to recover on them are readily available, we have been directed to no authority by the trial judge or by any of the parties which imposes a requirement of seeking indemnification on a surety before it may endeavor to avoid forfeiture or exonerate the bail. Our reported appellate decisions in the area have not undertaken to articulate such a requirement despite the opportunity. See State v. Peace, 63 N.J. 127 (1973); State v. Fields, 137 N.J. Super. 79 (App. Div. 1975), and State v. Hyers, 122 N.J. Super. 177 (App. Div. 1973).
In the unique circumstances of the criminal bail bond, we believe the better rule to be to the contrary. In view of the accepted policy of this State whereby equitable considerations may serve to frustrate, in whole or in part, forfeiture, we see no worthwhile purpose in requiring principal-surety litigation before there is a determination as to whether either is to be penalized and the extent of such penalty. Otherwise two contests are required in any case in which forfeiture is sought to be avoided. The contrary rule requires two contests at most only in the cases where some forfeiture is not avoided, and even in those the matter may end after the initial hearing, depending upon such factors as the extent of remission.
We therefore declare that a surety on a bail bond need not seek indemnification prior to its action for exoneration. Needless to say, if its contract or the law provides for indemnification, it may go against the principal first, but it need not. Nor are we at all concerned that if indemnification has been achieved prior to a surety's motion for exoneration, the surety may enjoy a windfall: its discharge also will act to discharge the principal, and any monies refunded to the surety must be paid over to the principal or held in *424 trust for him to the full extent of the indemnification payment.
Reference to the opinion below demonstrates that except for an extended, analytical and acceptable discussion on bail and forfeiture, as well as the aforementioned consideration and determination of the issue respecting the necessity for an action on the indemnification agreement as a presumed prerequisite to the relief here sought, the Law Division judge almost wholly ignored individual findings in any but two cases (Singletary and Baldwin), and summarily disposed of the balance of the motions in a five-line paragraph concluding the opinion:
Beyond what is set forth above as contained in the affidavits accompanying their motions, the sureties involved here produce no other proofs. They simply have made no showing at all entitling them to the relief sought. For the foregoing reasons the motions were denied. [153 N.J. Super. at 516]
A leaning toward such a summary disposition is entirely understandable if for no other reason than the number of cases presented. Beyond this, we can understand the impatience of the judge with the delay in the application of the sureties and the apparent lack of concern by their counsel for the judge's awareness of and attention to the guidelines enunciated in State v. Hyers, supra, 122 N.J. Super. at 180 (and cited with approval in State v. Peace, supra, 63 N.J. at 129). Nevertheless, such a summary disposition does not permit review of each case on the merits or an assessment of the propriety of the disposition in each case.
In this latter respect we observe that the attention of trial judges is constantly being directed toward the necessity for specific findings. As we said in Reiser v. Simon, 63 N.J. Super. 297 (App. Div. 1960):
* * * A trial judge must be explicit in his recital of the evidence and in his factual findings and must so correlate them to his legal conclusions that the * * * judgment entered manifestly appears to *425 be undergirded by legal proof of substantial probative value and by specific factual findings thereon. * * * [at 300-301]
In Kenwood Assocs. v. Englewood Bd. of Adj., 141 N.J. Super. 1 (App. Div. 1976), we pointed out that
* * * a trial judge in a nonjury case has the duty to set forth fully his findings and reasons, factual and legal, for reaching his decision. R. 1:7-4; Conford, "Findings of Facts and Conclusions of Law," 92 N.J.L.J. 225 (1969). Mere conclusory terminology * * * does not suffice. Such perfunctory treatment constitutes a disservice to the litigants, the attorneys and the appellate court. [at 4]
Beyond our suspicion that the Law Division judge denied the motions in all the cases incorrectly because of the sureties' failure first to pursue their indemnification remedies, the absence of findings of fact in any of the matters except Singletary and Baldwin causes our inability to ascertain whether the judge in fact applied the Hyers guidelines. The transcript of the argument before him suggests that this was his intention  he advised counsel of his involvement in both Hyers and Peace and of his understanding as to "what the Appellate Division has said and what the Appellate Court seems to approve"  as it also suggests his concern that the movant sureties may not have provided him with "any of the facts that would make those [Hyers and Peace] criteria." But assertions in the sureties' affidavits in the various motions do in fact provide information apropos of several of the Hyers guidelines. It may well have been the pre-occupation of the judge with that guideline having to do with the supervision of bail by the bondsman and the conceded lack of evidence with respect to efforts by him or the companies for which he was the agent to secure return of defendants that caused the omission to which we here take exception. In fact, the Law Division judge, noting the absence of allegations in the affidavits in this regard, adjourned the hearing to permit counsel for the companies "to make the showing" required with *426 respect to whether his "company did anything to help law enforcement authorities to get these people back."
We need not here and now decide whether in some particular case an absence of proof in regard to the bondsman's efforts to insure the return of the fugitive ("(c)" of the Hyers guidelines, 122 N.J. Super. at 180) might alone be sufficient to deny partial remission of the bail, though this conclusion would seem to contravene the principle of Hyers. A reversal and remand here is required in any event in light of the failure of the Law Division judge to correlate factual findings with his conclusions in a manner sufficient to permit review with respect to the legal soundness of that ultimate judgment. Reiser v. Simon, supra. And if it is not the failure first to seek indemnification alone or the failure of proof with respect to efforts to secure the return of the fugitives alone (or an exclusive combination of these two criteria) which motivated the judge, we not only do not know that, but we do not know what part consideration of the other Hyers guidelines (as to which there was some evidence) played.
This is without regard for some obvious differences appearing in the record to distinguish individual cases, such as the fact that in one the indictment was dismissed and in another defendant was incarcerated elsewhere.
Even with respect to the Singletary and Baldwin matters, discussed in more detail in the opinion below than the other cases in which the judge felt "the facts are quite similar * * * and the principles of law identical" (153 N.J. Super. at 508), the judge does not really make findings, but simply recites the affidavit evidence, opines that much of that is conclusory and emphasizes the failure of the surety to insure the return of the fugitive.
We share the concern of the trial judge for the inequities of remission to a surety who really did little or nothing at all for its premium money. But as Hyers indicates, additional factors must at least be considered. Until we are certain that the Law Division judge did consider these factors as they appear in the individual cases and until we know by *427 his telling us what weight he accorded them and why, we are unable to evaluate the legal propriety and justice of his judgment.
Reversed and remanded for a plenary hearing and determination consistent with the foregoing. We do not retain jurisdiction.