THE STATE OF NEW JERSEY v. JESSE SINGLETARY,
DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)

Decided September 27, 1979.

*Mr. Richard P. Blender* for applicant Peerless Insurance Company (*Messrs. Rosenthal & Rubinowitz*, attorneys).

*Mr. Mark Saker* for respondent County of Monmouth (*Mr. Richard T. O'Connor*, County Counsel, attorney).

McGANN, J. S. C.

Pursuant to the remand of the Appellate Division, *State v. Singletary,* 165 *N.J.Super.* 421 (App.Div.1979), a hearing was held on August 8, 1979. The essential facts developed are these.

Singletary was charged with having unlawfully possessed a .38-caliber revolver on May 22, 1973. His bail was set at $5,000 and met on September 4, 1973 by the posting of a surety bond of Peerless Insurance Company. The indictment was filed September 10, 1973. When Singletary failed to appear at his arraignment a bench warrant was issued on October 12, 1973. On March 28, 1974 bail was declared forfeit.

On September 30, 1974, as the result of Singletary coming to the attention of Los Angeles County, California, authorities, an NCIC check revealed the outstanding warrant and the Monmouth County Prosecutor was notified. On October 16, 1974 defendant refused to waive extradition. Proceedings were initiated leading to his eventual return on December 5, 1974. Because of administrative complications in the extradition process, two Monmouth County detectives were required to go twice to California to secure custody over Singletary.

After his return, plea negotiations on this charge and many others pending against him led to a plea agreement under which in return for his guilty plea on other charges the State agreed to dismiss this one. He was sentenced on those other charges. This indictment was then dismissed on March 31, 1975.

On notice to Singletary and the surety, judgment was entered on the forfeiture for $5,000 plus interest against them jointly and severally on May 25, 1976. That judgment was paid by Peerless to the county treasurer. It now seeks to vacate the judgment, to set aside the forfeiture and have the court order remission of the amount paid in whole or in part. *R.* 3:26–6(c).

At the hearing Pierre F. Conlon, who has been supervisor of bail bonds for Peerless since 1943, testified that the bondsman-

agent, Silas Carr, had never reported writing the bond to Peerless; that Carr had been the Peerless authorized agent for five or six years; that he has absconded and that Peerless has paid out in claims on his bonds somewhat in excess of $60,000 over any earned funds of Carr being held by Peerless. Necessarily, Conlon could not state that Carr had made any efforts to supervise Singletary while on bail. I find as a fact that he did not. The surety was in no fashion responsible for discovering Singletary or securing his return. The surety received no collateral for the bond. There is no doubt that Singletary is "judgment proof." Requiring the surety to proceed to judgment against him for indemnification would be senseless. The State proved extra costs incurred as follows: office expenses of county clerk and county counsel—$83; extradition costs—$2,281.59; costs of maintaining Singletary in jail for 48 days—$960. The surety does not dispute the reasonableness of the costs. It does argue, neither strongly nor convincingly, that it should not be responsible for the second trip to California nor for the jail expenses. The simple answer to both is that had it lived up to its agreement those public monies would not have been spent. I find that because of the failure of the surety to produce defendant, as it had undertaken to do, the added costs to the State were $3,324.59.

Is the surety entitled to a remission of the $5,000 paid on the judgment of forfeiture in whole or in part? Referring to the *Peace-Hyers* guidelines (see *State v. Singletary,* 153 *N.J.Super.* 505, 514 (Law Div.1977)) the only ones that apply in a positive sense are the actual expense to the State for recapture and "the intangible element of injury to the public interest in almost any case where a defendant deliberately fails to make an appearance in a criminal case." Here there was a compensated, commercial surety which deserves no credit for failure to supervise its charge nor for securing the return of the defendant. However, the State suffered no real prejudice either.

The surety is in a risk business. That is why it is entitled to charge a premium. To refund the entire $5,000 would be irrational. There would then be no risk. Is a partial remission equitable?

■ The basic problem in this case was the sloppy manner in which Peerless conducted its business. It allowed an obviously unprincipled, incompetent bond agent to write surety bonds upon which the State would rely as meaningful security for the production of Singletary. In a sense, that was a false representation. All Peerless was offering the State was security for an ultimate judgment of forfeiture that might be obtained—not security for the production of the bailed defendant. This is not what bail is all about. See *Singletary, supra.* 153 *N.J.Super.* at 511. The State permits those charged with a crime to go free in the custody of the surety only because the surety is assumed to be *reliable,* not *wealthy.* Wealth is only one factor to be considered when determining reliability, for an unscrupulous but wealthy surety could buy freedom for a felon. *Cf. In re Midland Ins. Co.,* 167 *N.J.Super.* 237, 247 (App.Div.1979).

■ There is really no equitable argument in favor of the surety which commends itself to the court in this case. The burden of demonstrating an equitable basis for remission necessarily rests with the surety. It has not met that burden. The motion is denied.

■ Assume the foregoing analysis to be incorrect and that a partial remission should be considered on its merits, the State did spend $3,324.59 to get Singletary back from California and jail him. The involved process of extradition added unnecessary burdens to the Executive Offices of both New Jersey and California. When one then adds the "intangible element of injury to the public interest," a sense of equity still dictates that no remission at all be made in this case.

As a final argument, the surety states that in connection with Singletary's other charges (all ultimately disposed of on March

21, 1975) and flight, a bail of $3,000 was forfeited, as was $250 of a $500 surety bond bail. It then argues that it is unfair for the State to assess all costs of recovery of Singletary against it on its bond without making allowance for the monies received on the other bonds.

The State concedes that it has received the $250. As to the $3,000 forfeited bail, it points out that it was a property bail; that judgment has been entered which is a lien against that property, but that for practical reasons the county counsel has decided not to proceed to levy execution and attempt to sell the property to satisfy the judgment. The more sympathetic treatment to be accorded to private rather than commercial sureties as indicated in *State v. Hyers,* 122 *N.J.Super.* 177 (App.Div. 1973), is a realistic factor bearing on that decision. In view of the circumstances here wherein the costs of reacquiring custody were large and the sum received from other forfeitures was only $250, this court does not deem ripe for decision the question of whether one surety is entitled to credit for monies paid to the county treasurer by other sureties for the same defaulting defendant. That question would probably better be resolved in the context of a civil action by one surety against the other for contribution.

A last procedural item should be addressed. As noted above, the forfeiture was declared on March 28, 1974.[1] Judgment was entered on notice on May 25, 1976. No appeal was taken from that judgment. It was paid by Peerless on September 13, 1977. Satisfaction of the judgment has been duly recorded. This motion to set aside the judgment was filed August 1, 1977. It is clearly out of time. *R.* 4:50–2. No reason for delay in filing the motion has ever been advanced by the

---

[1]The surety is obligated to pay its undertaking upon due notice of the forfeiture unless it promptly moves to be relieved of the forfeiture. *In re Midland Insurance Company, supra,* 167 *N.J.Super.* at 250.

surety. Public policy concerning the orderly administration of justice, as embodied in the rule of court, requires denial of the relief sought. Litigation must terminate. *N.J.S.A.* 2A:162–8 does not change that conclusion. It recognizes that after payment of a forfeiture or judgment a court may order the county treasurer to repay all or part of the money. It contains the following outside time limitation: "Application for a return of moneys so paid shall be made to the court within 4 years after the recognizance shall have been declared forfeited." The time limitation is directed to the forfeiture, not to any judgment which a court may subsequently enter. As to reopening a judgment, the court rule must take precedence. *Winberry v. Salisbury,* 5 *N.J.* 240 (1950).