# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0415-23

O.M.-R.,[1]

    Plaintiff-Appellant,

v.

T.D.P.,

    Defendant-Respondent.

_____

Submitted December 5, 2024 – Decided December 16, 2024

Before Judges Mawla and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FD-13-0815-19.

August J. Landi, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

---

[1] We utilize initials pursuant to Rule 1:38-3(a)(1).

Plaintiff O.M.-R. appeals from an August 29, 2023 order granting defendant T.D.P. the ability to remove the parties' daughter to the State of Georgia. We reverse and remand for the reasons expressed in this opinion.

The parties have a son and a daughter. The son resides with plaintiff and is not the subject of this appeal, and the daughter resides with defendant. Between 2019 and leading up to the August 2023 order, the parties appeared in court before several judges to address custody and parenting time under this non-dissolution (FD) docket. During this time as well, the Division of Child Protection and Permanency (Division) became involved and initiated proceedings under the abuse or neglect (FN) docket, securing an order for care and supervision of the children.

On July 2, 2019, the first judge entered an order denying defendant's request to remove the daughter, who was then approximately one year old, to Georgia. Although we have not been provided with the transcript of the July 2019 proceeding, the court's order stated defendant "fail[ed] to satisfy Bisbing v. Bisbing[, 230 N.J. 309 (2017).]" We take this to mean defendant failed to establish cause[2] for the removal because the order designated defendant as the

_____

[2] The Legislature has required "a preliminary demonstration of 'cause' under N.J.S.A. 9:2-2 before the actual removal." Dever v. Howell, 456 N.J. Super. 300, 311 (App. Div. 2018).

residential custodian of the daughter, presumably having addressed the best interests factors under N.J.S.A. 9:2-4(c) in making the custody award. The July order also awarded plaintiff overnight parenting time during the weekends.

On August 7, 2019, a second judge entered an order continuing the parties' joint legal custody of the daughter, enforcing plaintiff's parenting time, setting a holiday parenting time schedule, restraining the parties from making negative remarks in front of the child, and establishing a means for the parties to communicate regarding the child. On August 21, 2019, a third judge denied plaintiff's order to show cause to enforce parenting time. The appellate record lacks a transcript containing the judge's findings, but the order required the parties to appear in court two months later, to address plaintiff's application to enforce parenting time.

On October 21, 2019, the court entered an order, which found defendant had violated plaintiff's right to parenting time and enforced his parenting time by sanctioning defendant. The court clarified the parenting time "[b]ecause [the] parties [were] having difficulty understanding [the] prior parenting time order." The October order also memorialized plaintiff's motion to change custody was denied because he did not "demonstrate a prima facie showing of a substantial,

non-temporary change in circumstances pursuant to <u>Lepis v. Lepis</u>, 80 N.J. 139 (1980)."

On January 6, 2020, a fourth judge heard the matter and entered an order, which in pertinent part stated: the parties would "share joint residential custody" of the child; set plaintiff's parenting time, which remained primarily during the weekends; and that "[p]rior to the [defendant] filing a future application for modification she shall complete a psychological evaluation." On February 12, 2021, a fifth judge entered an order memorializing the parties' agreement to split parenting time, with plaintiff having the daughter from the first until the fifteenth day of each month, and defendant having her from the sixteenth day until the end of the month.

On July 5, 2021, defendant allegedly stabbed plaintiff. According to appellant's brief, the "[m]unicipal [c]ourt charges remain pending" for this offense.

The parties' son was born in early 2022. On or about May 14, 2023, defendant removed the daughter to Georgia without plaintiff's consent or a court order. This prompted plaintiff to file an order to show cause on June 6, 2023, which was heard by the trial judge[3] the following day. Plaintiff certified the

---

[3] The trial judge was the sixth and final judge to handle this matter.

A-0415-23

parties' daughter had not been in school and he had not had his court ordered parenting time for the first half of the month. He was concerned for the child's safety.

Both parties appeared for the virtual hearing. The deputy attorney general (DAG) representing the Division in the FN matter, the Division caseworker, and the children's law guardian also participated in the hearing.

Plaintiff advised the court he opposed the removal because the court had denied it on June 2, 2019, and advised the parties that removing a child from the state without consent, or an order, would be illegal. Defendant claimed the Division gave her permission for the removal. The DAG acknowledged the Division was aware of defendant's desire to move, but it did not give her approval to do so. The caseworker echoed the DAG's representation and added the Division was not opposed to defendant moving out of state, but that defendant had to obtain a court order to remove the child. The caseworker recounted that defendant did not care what the Division said, the Division told her she could leave, and she intended to leave. The law guardian informed the Division that she received information that the children[4] "had gone to school

---

[4] These were not the parties' children, but older children belonging to defendant who were school-aged.

[the] morning[ of their departure] letting everyone know that that would be their last day at school . . . ."

Neither the Division nor the law guardian knew where the children were residing. As the FN case was still open and the Division maintained care and supervision, the DAG advised the court the Division's plan was to "call in . . . a courtesy check for the agency [in Georgia] . . . to find the children and to tell us whether or not the children are indeed safe. At that point, the Division would possibly look at closing the case."

Plaintiff advised the court he did not consent to the removal and had been raising the parties' daughter since birth. He alleged the removal would make it harder for him to parent, because defendant was violent towards him and failed to communicate with him.

Defendant was unruly and combative during the hearing. At some point, the judge realized her children were with her in the car and listening to the hearing. After defendant refused to follow the judge's instruction to exit the car so as not to have the children participate in the hearing, the judge directed court staff to disconnect defendant from the hearing. To calm plaintiff's emotions, the judge proceeded to address him alone. She then stated: "The reality is I can have a whole hearing on this. And it's very likely [defendant] would win the

hearing and be able to move with [your daughter]." The judge stressed plaintiff should not feel "like I'm telling you you've lost the case because you haven't. I haven't had the testimony yet. I want you to think about this and I'll tell you what the problem is . . . for your daughter . . . she would be away from her three siblings."

The judge denied plaintiff emergent relief and instead scheduled a hearing to address the removal. She remarked that "for right now, I'm not telling [defendant] to return the child today because we know she's going to end up [in Georgia]." On June 7, 2023, the judge entered an order scheduling the hearing for July 10, 2023. The order stated: "The matter will proceed as a hearing and address the unilateral removal of the child in person . . . ."

The matter returned to court on July 10, 2023. The DAG, the Division caseworker, and the law guardian appeared, as did both parties. The DAG advised that the Georgia Division of Family and Children Services performed a "courtesy check" and "no issues . . . were found. The children are being registered for school. . . . And [defendant] started working." The Division advised plaintiff was attending a batterer's intervention program and had enrolled the parties' son in therapy and scheduled his medical appointments. The daughter was also staying in New Jersey with plaintiff. The caseworker visited

7

with the daughter and noted no concerns. Defendant claimed plaintiff was refusing to return the daughter and, as a result, the daughter would be missing medical appointments.

The judge noted there was no issue with custody of the son, and as related to the daughter "[t]he question is with the location change, where does she reside for school, really, is what it comes down to." Plaintiff told the judge he signed the daughter up for school in New Jersey and had been financially supporting her for all her life. He was also recently engaged; maintained a home, finances and a vehicle; and he and his fiancé were "more than willing" to care for his daughter. Plaintiff also had family support from his mother and "multiple sisters." Regarding the removal, plaintiff clarified he never opposed defendant leaving the state, but wanted her to be within driving distance and told defendant he opposed her going to Georgia because it was too far. Plaintiff claimed defendant had to leave New Jersey because she could not hold a job due to her behavior at work, but that he should not be penalized for her inability to do so.

Plaintiff asserted he was the more suitable parent because he respected the court's orders whereas defendant did not and "does what she wants" without consequences. He claimed defendant would not honor his parenting time if the judge permitted her to retain the daughter in Georgia. He noted defendant took

8

the child out of school in New Jersey and did not tell him. Instead, defendant called him "to have [his] daughter call him and tell [him], oh, we're going to Georgia."

Defendant testified she was a capable mother, having cared for all four of her children without their fathers or child support. She claimed plaintiff was not financially stable and could not handle parenting the parties' daughter. He did not have the child enrolled in school when she was with him. She also claimed plaintiff agreed to see the child during the holidays and during the summer but later reneged. Defendant denied interfering with plaintiff's parenting time and had "no issues with him getting his daughter."

Unfortunately, as with the prior hearing, the decorum devolved because of defendant's conduct and refusal to listen to the judge. As a result, the judge ended the hearing and said she would issue an order.

The following day, the judge interviewed the parties' daughter, who was then four years of age and not yet in kindergarten.[5] The daughter did not give clear answers regarding her custodial preference. She expressed a love of both

---

[5] After speaking with the daughter, the judge invited the parties' son into the room and interviewed him.

A-0415-23

parents and a desire to live with both. The law guardian attended the interviews, and along with the judge, attempted to discern clear answers from the children.

On August 29, 2023, the trial judge entered an order granting the removal of the parties' daughter to Georgia. The order recited the daughter "indicated that, although she loved all of the members of her family, she wished to reside with [defendant] and be closer to her siblings in Georgia." Additionally, "[f]or [the] reasons stated on the record" the judge ordered the parties to share joint legal custody of the daughter and designated defendant the parent of primary residence. The judge ordered the parties to "maintain communications about all issues regarding [their daughter and] . . . arrange open and liberal parenting time for [plaintiff] on [their daughter's] school breaks such as the summer and any extended school breaks." The judge also ordered the parties to "share and rotate holidays."

I.

On appeal, plaintiff argues the trial judge made no findings of fact or conclusions of law as required by Rule 1:7-4(a). The judge did not follow Bisbing and make findings whether there was cause for the removal under N.J.S.A. 9:2-2, or whether the removal was in the child's best interests by analyzing the N.J.S.A. 9:2-4(c) best interests factors. In addition to the lack of

findings, the removal was granted despite the fact the record showed defendant illegally removed the child from the state, without defendant filing a formal application, and without permitting plaintiff cross-examination. Instead, the court shifted the burden onto plaintiff to prove why a removal was not in the child's best interests, and failed to recognize that before defendant's removal, neither party had been designated the parent of primary residence and they shared equal custody.

Plaintiff asserts the judge dispensed with a hearing because she had pre-judged the case when she remarked that defendant would likely win the hearing and be able to move with the daughter. The judge also gave inordinate weight to the child's preference, while ignoring plaintiff's role in the child's life and defendant's conduct.

## II.

"The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (internal citation omitted) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "On the other hand, where our review addresses questions of

law, a 'trial judge's findings are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles.'" N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015) (quoting N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 434 (App. Div. 2002)). Our review for conclusions of law is de novo. S.D. v. M.J.R., 415 N.J. Super. 417, 430 (App. Div. 2010) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

## III.

In pertinent part, N.J.S.A. 9:2-2 prohibits the removal of a child "without the consent of both parents, unless the court, upon cause shown, shall otherwise order." Where the parties dispute a removal, the court determines whether cause has been shown by applying the best interests factors in N.J.S.A. 9:2-4(c). Bisbing, 230 N.J. at 309. N.J.S.A. 9:2-4(c) states that:

> [i]n making an award of custody, the court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision;

the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.

The parent seeking the removal bears the burden of proof to show cause. Bisbing, 230 N.J. at 323.

Beyond the statutory factors, a court's evaluation of a child's best interests requires it "to consider any and all material evidence." Kinsella v. Kinsella, 150 N.J. 276, 317 (1997) (citing In Re Baby M, 109 N.J. 396, 456 (1988)). This allows each allegation and fact to be heard in context, enabling the court to gain insight that would not otherwise be possible. The failure to conduct an appropriate best interests analysis constitutes a misapplication of law and is reversible error. A.J. v. R.J., 461 N.J. Super. 173, 182-83 (App. Div. 2019).

Equally important is that Rule 1:7-4(a) requires the trial court to make findings of fact and provide conclusions of law. Fact-finding "is fundamental to the fairness of the proceeding and serves as a necessary predicate to meaningful review . . . ." R.M. v. Sup. Ct. of N.J., 190 N.J. 1, 12 (2007). "Naked conclusions do not satisfy the purpose of R[ule] 1:7-4. Rather, the trial court

13

must state clearly its factual findings and correlate them with the relevant legal conclusions." Curtis v. Finneran, 83 N.J. 563, 570 (1980) (citing State v. Singletary, 165 N.J. Super. 421, 424-25 (App. Div. 1979)).

It is self-evident from the record that the trial judge was confronted by two parents who did not agree on much and had no qualms arguing with one another despite the judge's entreaties. This made the case particularly difficult to try in an organized manner. However, our difficulty is that the record contains no findings by the trial judge as to why defendant established cause for the removal, or analysis of best interests factors to enable us to understand how the judge arrived at the conclusion set forth in her August 29, 2023 order. Our review of the limited factual testimony elicited during the July 10, 2023 hearing shows defendant's behavior caused it to end abruptly, and does not support the judge's decision to grant the removal.

There was testimony on both sides evidencing both parties were involved parents who were equally suited to serve as the parent of primary residence. Although the July 2, 2019 order designated defendant the parent of primary residence, the order does not explain why the designation was made and we do not have the transcript from that hearing. Even so, the trial judge's August 2023 order does not seem to rely on the July 2019 determination. And if it did, aside

14

from Bisbing, the unilateral removal of the child constituted a change in circumstances requiring a reappraisal of the best interests factors. Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993). In short, we do not know why defendant was granted residential custody based on the history of the case and the facts in the record. Her unilateral removal of the child to Georgia certainly would not be a basis to grant her custody. See Dever, 456 N.J. at 313 (refusing to sanction a parent's unlawful removal).

The child's alleged preference expressed at her interview did not outweigh the lack of findings on the remaining fourteen statutory best interests factors in N.J.S.A. 9:2-4(c). Moreover, we part ways with the judge's conviction that the child clearly expressed her custodial preference for defendant. The child's preference was at best ambiguous and directly contradict the judge's finding she preferred to be in Georgia with her siblings. The following excerpts from the interview demonstrate our point:

> [LAW GUARDIAN]: [I]f the [j]udge said that you needed to stay here and live with [plaintiff] and visit with [defendant], how would that make you feel?
>
> [PARTIES' DAUGHTER]: I would be sad.
>
> [LAW GUARDIAN]: Okay. And if the [j]udge said you went to live with [defendant] and had to visit with [plaintiff], how would that make you feel?

[PARTIES' DAUGHTER]:  Okay.

. . . .

THE COURT:  [L]et me ask you this.  Would you like to live with [defendant] where you go to school and then be with [plaintiff], like summers and vacations?  Or would you like to be with [plaintiff] when you go to school and be with [defendant] summers and vacations?

. . . .

[PARTIES' DAUGHTER]:  I want [plaintiff] (indiscernible) and I want to go with [defendant].

THE COURT:  Okay.  So you want to go with [defendant] to go to school or with [plaintiff] to go to school?

[PARTIES' DAUGHTER]:  With [plaintiff] to go to school.

THE COURT:  And then be with [defendant] when you're not in school?

[PARTIES' DAUGHTER]:  But I don't know when I'm going to go to school.

. . . .

THE COURT:  Right, she doesn't know when she's going to go to school.  Yeah, she's four.

The trial judge and the law guardian often had difficulty understanding the child's answers as demonstrated by this colloquy:

A-0415-23

[LAW GUARDIAN]:  [H]ow would you feel about– how would it make you feel, okay, if you lived with your sisters in Georgia and visited [your brother]–

[PARTIES' DAUGHTER]:  Uh-huh.

[LAW GUARDIAN]:  –when you are with [plaintiff]?

[PARTIES' DAUGHTER]:  Good.

[LAW GUARDIAN]:  Okay.  And how would you feel if you lived with [your brother] and visited your sisters in Georgia?

[PARTIES' DAUGHTER]:  (indiscernible)

THE COURT:  Bad?  Okay.  She said bad, right?

[LAW GUARDIAN]:  Well, was that bad or good?

THE COURT:  Did you say bad or sad?

[PARTIES' DAUGHTER]:  (indiscernible)

. . . .

[LAW GUARDIAN]:  Good?  Yeah, she said good.

THE COURT:  No, I–oh.

[LAW GUARDIAN]:  She said yeah.

THE COURT:  So both?

[LAW GUARDIAN]:  Either one is okay.

THE COURT:  What's that?

17

[LAW GUARDIAN]:  Either one, I think, was okay.

Our reading of the child interview transcript suggests that arguably the child was not a candidate for an interview.  Long ago we held:

> The age of the child certainly affects the quantum of weight that [their] preference should be accorded, but unless the trial judge expressly finds as a result of its interview either that the child lacks capacity to form an intelligent preference or that the child does not wish to express a preference, the child should be afforded the opportunity to make [their] views known.  We would think that <u>any child of school age</u>, absent the express findings we have indicated, should have that opportunity and that the judge would be assisted thereby.
>
> [<u>Lavene v. Lavene</u>, 148 N.J. Super. 267, 272 (App. Div. 1977) (emphasis added).]

Given the problematic conduct of the parents in the courtroom, we appreciate the trial judge's efforts to extract objective evidence from the child to enable her to decide the case.  However, the parties' daughter was not of school age and her ability to answer questions, which were sometimes posed to her in compound form, did not yield a clear record.

For these reasons, we are constrained to remand this matter for a re-hearing.  At the hearing, defendant shall bear the burden of demonstrating whether she had cause to remove the daughter to Georgia.  The court shall then assess the facts elicited from the parties and apply them to the N.J.S.A. 9:2-4(c)

factors. If the court elects to interview the children, it shall afford the parties the ability to ask questions of them through the court pursuant to Rule 5:8-6.

Once the court adjudicates the removal and custody issues, it shall set a clearly defined custody and parenting time schedule. The court may utilize Rule 5:8-5(a) as a guide for itself regarding the items that should be in the custody and parenting time order, and it shall direct the parties to submit their respective proposals for custody and parenting time prior to trial, as required by the Rule, to further aid the court in its decision making. The record does not give us confidence that leaving the parties to arrange an open and liberal parenting schedule is in the children's best interests.

Finally, although the judge made a conscientious attempt to resolve this dispute, she made statements, which we have recounted above, and limited findings on the merits both of which evidence a commitment to her ruling. For these reasons, a different judge should hear the matter on remand. See R. 1:12-1(d) (stating a judge "shall not sit in any matter if the judge . . . has given an opinion upon a matter in question in the action").

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19

A-0415-23